UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| In re:<br><br>AMERICAN HOME PRODUCTS LLC,[1]<br><br>        Debtor. | )<br>) Chapter 11<br>)<br>) Case No. 19-21054-JRS<br>)<br>) Judge Sacca<br>) |

**APPLICATION OF DEBTOR FOR APPROVAL OF AGREEMENT WITH AURORA MANAGEMENT PARTNERS, INC. TO PROVIDE THE SERVICES OF WAYNE TANNER AS CHIEF RESTRUCTURING OFFICER AND OTHER SUPPORT PERSONNEL, *NUNC PRO TUNC* TO THE PETITION DATE**

The above-captioned debtor and debtor in possession (the "Debtor") hereby applies to the Court for the entry of an order approving the agreement between the Debtor and Aurora Management Partners, Inc. ("Aurora") and authorizing the Debtors to (i) retain Aurora provide the services of Wayne Tanner as Chief Restructuring Officer (the "CRO") and other support personnel and (ii) designate Wayne Tanner as the Debtor's CRO (the "Application"), *nunc pro tunc* to the Petition Date (defined below), pursuant to sections 105 and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"). In support of this Application, the Debtor relies on the Declaration of David M. Baker in Support of this Application (the "Baker Declaration") attached hereto as Exhibit A.

In further support of this Application, the Debtor respectfully represents as follows:

**Background**

1.     On the date hereof (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor is continuing in possession of its property and

---

[1] The last four digits of the Debtor's federal tax identification number are 3418.

{8121970: }

is operating and managing its business, as debtor in possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code.

2. On the date hereof (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor is continuing in possession of its property and is operating and managing its business, as debtor in possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code.

3. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. Consideration of this Application is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The venue of Debtor's chapter 11 case and this Application is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The factual background regarding the Debtor, including its business operations, its capital and debt structure, and the events leading to the filing of the chapter 11 case, is set forth in detail in the Declaration of Wayne Tanner in Support of Chapter 11 Petition and First Day Motions (the "Tanner Declaration"), filed contemporaneously with this Application and fully incorporated herein by reference.[2]

5. Prior to the Petition Date, in January 2019, the Debtor employed Aurora as an exclusive restructuring advisor in connection with a strategic assessment for a potential sale and restructuring transaction outside of bankruptcy. The engagement also contemplated that Aurora would provide the services of Wayne Tanner as CRO, and for Aurora to provide additional support personnel and services. Mr. Tanner was appointed as CRO of the Debtor effective on or about January 18, 2019.

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Tanner Declaration.

{8121970: } 2

**Relief Requested**

6.  By this Application, the Debtor requests the entry of an order, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, authorizing, but not directing, the Debtors to (i) (a) retain Aurora to provide the Debtor with the services of Wayne Tanner as the Debtor's CRO in this chapter 11 case, and (b) designate Wayne Tanner as the Debtor's CRO, *nunc pro tunc* to the Petition Date, pursuant to the terms of that certain agreement dated January 18, 2019 by and between the Debtor and Aurora and attached hereto as Exhibit B (the "Agreement"); (ii) approving the terms of the Agreement, including the proposed fee structure and indemnification provisions as set forth in the Agreement; and (iii) granting such other and further relief as the Court deems appropriate.

**Necessity and Qualifications**

7.  Aurora is a professional services firm engaged in the business of providing financial advisory, restructuring, and distressed asset management services, with offices located at 112 South Tryon Street, Suite 1770, Charlotte, NC 28284 (and other offices located in Cleveland, Atlanta and Chicago). Together, Aurora provides strategic investing, financial advisory, and distressed asset management services to a variety of businesses with a large range of enterprise values, including publicly traded and private companies. Since its original engagement by the Debtor in January 2019, Aurora has been assisting the Debtor with respect to managing liquidity, seeking additional capital, and analyzing potential strategic alternatives for the Debtor. Mr. Tanner has been serving as CRO of the Debtor for over four months.

8.  Aurora has widespread experience in providing restructuring services in reorganization proceedings, and it has an excellent reputation for the services it has rendered in chapter 11 cases on behalf of debtors and creditors throughout the United States. Aurora's professionals have represented various stakeholders in a number of distressed situations over the last 19 years, including unsecured creditors, senior lenders, equity holders, and debtors in matters both in and out of court.

Furthermore, the Aurora professionals involved in the Debtor's chapter 11 case have been involved in other bankruptcies in recent years, including: Suniva, Inc., Dallas Manufacturing Company, Mairec Precious Metals U.S., Inc., Eladio Pacheco dba. Pancho Villa. The Aurora team of professionals working pursuant to the Agreement will be overseen by David M. Baker. Mr. Tanner will serve as the Debtor's CRO, and other professionals from Aurora will serve as support staff to Mr. Tanner as deemed necessary by Mr. Tanner.

## Services to Be Rendered

9.   Aurora was originally engaged pursuant to the terms of the Agreement attached hereto as Exhibit B and will continue to serve pursuant to that Agreement, although its role has been refined as the Debtor's restructuring plan has developed. As described in the Baker Declaration, Aurora will work with the Debtor's Board of Managers and the Debtor's officers, employees, and professionals with respect to the following:

- Provide the services of Wayne Tanner as CRO, which would be equal to the services typically provided by the office of the President and chief operating officer, with other Aurora personnel available to assist Mr. Tanner as CRO;

- Assist with the day-to-day operations of the Debtor;

- Assist with a 13-week cash flow to monitor ongoing projected cash flow and recommend adjustment to maximize liquidity;

- Continue to assist the Debtor in the implementation of its current operating business plan and compliance with requirements under the proposed debtor in possession financing;

- Assist the Debtor in executing on its plan to maximize value through the sale of its assets in this chapter 11 case;

- Assist the Debtor's bankruptcy counsel in the preparation of the possible chapter 11 petition and chapter 11 first day motions;

- Prepare the Debtor's chapter 11 monthly operating reports to the United States Trustee;

- Attend the Debtor's meeting of creditors and court hearings and testify as necessary;

- Work with the Debtor and its professionals to provide updates to and negotiate with the Debtor's various creditor constituencies; and

- All other items as agreed to from time to time between the Board of Managers and Aurora.

## Compensation

10. Subject to the Court's approval, Aurora will charge the Debtor for financial advisory services on an hourly basis in accordance with Aurora's ordinary and customary hourly rates, as they may change from time to time, in effect on the date that such services are rendered, plus reimbursement of actual and necessary out-of-pocket expenses incurred by Aurora. The current hourly rates charged by Aurora are as follows:

| Role | Hourly Rate |
| --- | --- |
| Director through Managing Partner | $350 - $695 |
| Consultant / Senior Consultant | $250 - $350 |
| Analysts | $175 - $250 |
| Administrative | $85 |

11. Mr. Tanner's hourly rate is $475/hour. As described more fully in the Baker Declaration, the terms of the Agreement are similar to the terms, both financial and otherwise, agreed to by Aurora and other restructuring firms, both inside and outside of bankruptcy. Aurora's hourly rates are set at a level designed to compensate Aurora fairly for the work of its consultants and analysts; hourly rates vary with the experience and seniority of the individuals assigned. These hourly rates are subject to periodic adjustments to reflect economic and other conditions and are consistent with the rates charged elsewhere. The terms of the Agreement were negotiated between the Debtor and Aurora, and reflect both the extensive work to be performed by Aurora in the Debtor's chapter 11 case and the firm's expertise.

12. During the five months prior to the Petition Date, the Debtor paid Aurora approximately $359,029.43. Such funds were used to pay for, among other things, running the

Debtor's business as CRO on a day to day basis upon the resignation of the Debtor's former chief executive officer, evaluating cash flow and strategic options, pursuing potential sale structures and talking with interested parties, pursing potential out of court alternatives, and in contemplation and preparation of the Debtor's bankruptcy case. Prior to the filing of the chapter 11 case, the Debtor paid Aurora a retainer in the amount of $50,000 (this is amount is included in the total amount above which Aurora has received to date). As of the Petition Date, $35,872.50 remains unapplied. Aurora intends to hold the retainer until further application of such retainer is approved by the Court.

13. Aurora will maintain detailed, contemporaneous records of time and any actual and necessary expenses incurred in connection with the rendering of services by category and nature of services rendered. Because Aurora is not being employed as a professional under section 327 of the Bankruptcy Code, the Debtor submits that Aurora will not be required to submit fee applications pursuant to sections 330 and 331 of the Bankruptcy Code. Instead, the Debtor requests that Aurora comply with the guidelines of Section J of this Court's General Order 26-2019 (the "Complex Case Procedures") for review and payment of its professional fees and expenses during the Chapter 11 Case. In accordance with the Complex Case Procedures, Aurora will submit monthly statements to the Professional Fee Notice Parties (as defined in the Case Procedures) and comply with the notice and objection procedures before receiving payment of any of its fees or expenses.

14. To the best of the Debtor's knowledge, information, and belief, no promises have been received by Aurora or by any staff member thereof, as to compensation in connection with the Debtor's case other than in accordance with the provisions of the Bankruptcy Code. To the best of the Debtor's knowledge, information, and belief, Aurora has no agreement with any other entity to share with such entity compensation received by Aurora in connection with the Debtor's chapter 11

case. Therefore, the Debtor submits that Aurora's proposed compensation structure, as described in the Agreement, should be approved.

## Indemnification

15.     Subject to Court approval (including in accordance with the proposed order) and pursuant to terms of the Agreement, in connection with Aurora's engagement to provide financial advisory and restructuring support services to the Debtor, the Debtor shall indemnify and hold harmless Aurora and its affiliates against all losses, claims, damages, expenses (including reasonable fees and disbursements of counsel and accountants), costs (including, without limitation, expenses, fees and disbursement and time charges related to giving testimony or furnishing documents in response to a subpoena or otherwise) and liabilities (joint or several), to the extent and in the manner provided in Schedule B to the Agreement dated January 18, 2019.  The Agreement also contemplates certain contribution obligations if indemnification or reimbursement is ultimately unavailable.

## Disinterestedness

16.     Although the Debtor submits that the retention of Aurora as set forth herein is not governed by Section 327 of the Bankruptcy Code, the Baker Declaration discloses, among other things, any connection that Aurora has with the Debtor and certain other creditors and parties in interest in the chapter 11 case.  The Debtor submits that Aurora holds no interests which are materially adverse to the Debtor.

17.     Based on and as set forth in the Baker Declaration, Aurora informed the Debtor that Aurora has assessed, and will continue to assess, any and all client relationships to ensure that Aurora does not represent any interest adverse to the Debtor, its creditors, or other parties-in-interest, and that no disqualifying circumstances exist.  Further, Aurora shall disclose on an ongoing basis any relationships that may reflect upon Aurora's disinterestedness.  The Debtor understands that to the extent Aurora discovers any additional facts bearing upon matters described herein or its engagement

by the Debtor during the period of its employment, Aurora will promptly disclose such facts and supplement the information contained in this Application and the Baker Declaration.

18. Aurora has not been retained to assist any entity or person other than the Debtor on matters relating to, or in connection with, the Debtor and its chapter 11 case. If this Court approves the proposed retention and employment of Aurora by the Debtor, Aurora will not accept any engagement or perform any service for any entity or person other than the Debtor related to this chapter 11 case. Aurora will, however, continue to provide professional services to, and engage in commercial or professional relationships with, entities or persons that may be creditors of the Debtor or parties in interest in this chapter 11 case; provided, however, that such services do not relate to, or have any connection with, the Debtor and its chapter 11 case.

19. The Debtor has been advised that Aurora will not share any compensation to be paid on behalf of the Debtor in connection with services to be performed with any other person, other than other professionals of Aurora, to the extent required by section 504 of the Bankruptcy Code.

## Basis for Relief

20. The relief described above is sought pursuant to sections 105(a) and 363(b) of the Bankruptcy Code because the Debtor's payment of Aurora pursuant to the terms of the Agreement represents a proposed use of the Debtor's property outside the ordinary course of the Debtor's business. Section 363(b)(1) of the Bankruptcy Code provides, in pertinent part: "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business property of the estate." 11 U.S.C. § 363(b)(1). Further, pursuant to section 105(a) of the Bankruptcy Code, the "court may issue any order, process, or judgment that is necessary to carry out the provisions of this title." 11 U.S.C. § 105(a).

21. Under applicable case law, if a debtor's proposed use of its assets pursuant to section 363(b) of the Bankruptcy Code represents a reasonable business judgment on part of the debtor, such

use should be approved. See, e.g., In re Chateaugay Corp., 973 F.2d 141, 143 (2d Cir. 1992); Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1070 (2d Cir. 1983) (requiring an "articulated business justification"); In re Del. & Hudson R.R. Co., 124 B.R. 169, 176 (D. Del. 1991) (courts have applied the "sound business purpose" test to evaluate motions brought pursuant to section 363(b)); In re Global Crossing Ltd., 295 B.R. 726, 743 (Bankr. S.D.N.Y. 2003); In re Integrated Resources, Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985)) ("[T]he business judgment rule is 'a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the actions was in the best interests of the company.'"). Courts have applied the section 363(b) standard when a debtor employs one or more individuals to serve as restructuring officers or managers. See In re Tokheim Corp., Case No. 02-13437 (RJN) (Bankr. D. Del. 2002).

22. Moreover, the retention of corporate officers and support staff is proper under section 363 of the Bankruptcy Code, and numerous courts have authorized retention of officers under this provision of the Bankruptcy Code. See, e.g., In re Legacy Turf Company LLC, Case No. 16-41504 (Bankr. N.D. Ga. June 30, 2016); In re Noranda Aluminum, Inc., No. 16-10083 (Bankr. E.D. Mo. Mar. 17, 2016); In re CH Liquidation Association, Case No. 16-51552 (Bankr. N.D. Ohio July 22, 2016); In re Patriot Coal Corp., No. 15-32450 (Bankr. E.D. Va. June 10, 2015); In re FirstEnergy Solutions Corp., et al., Case No. 18-50757 (Bankr. N.D. Ohio April 28, 2018).

23. In addition, under section 105(a) of the Bankruptcy Code, the Court has expansive equitable powers to fashion any order or decree that is in the interest of preserving or protecting the value of the Debtor's assets. Bankruptcy courts are "specialized court[s] of equity." In re Connolly North America, LLC, 802 F.3d 810, 814 (6th Cir. 2015). Section 105(a) of the Bankruptcy Code also authorizes the Court to issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). This section "grants the

bankruptcy court the power to take appropriate equitable measures needed to implement other sections of the Code." In re Dow Corning Corp., 280 F.3d 648, 656 (6th Cir. 2002) (citing In re Granger Garage, Inc., 921 F.2d 74, 77 (6th Cir.1990)). The Debtor's proposed retention of Aurora and Aurora professionals satisfies the applicable authority and is a sound exercise of the Debtor's business judgment. To assist in its restructuring efforts, the Debtor needs specialized advice from experienced operations professionals. In light of Aurora's experience with restructuring similar organizations and history of service to the Debtor, the Debtor has ample reason to engage Aurora's services in order to meet this need. Accordingly, the Debtors submit that the relief sought herein is in the best interest of the Debtor, its creditors, and other parties in interest, and, as such, is well within the Debtor's reasonable business judgment and should be approved by this Court.

### Notice

24. No trustee, examiner or official committee has been appointed in this chapter 11 case. Notice of this Application has been served on the following parties or, in lieu thereof, to their counsel, if known: (i) the United States Trustee for the Northern District of Georgia; (ii) those creditors listed on each of the Debtor's List of Creditors Holding 20 Largest Unsecured Claims; (iii) the Debtor's prepetition secured lender; (iv) the Debtor's proposed debtor-in-possession lender; and (iv) the Internal Revenue Service; (v) the Georgia Department of Revenue; (vi) the Attorney General for the State of Georgia; (vii) the United States Attorney for the Northern District of Georgia; (viii) Aurora; and (ix) those parties who have requested service of notice in this case. In light of the nature of the relief requested herein, the Debtor submits that no other or further notice need be given.

### No Prior Request

25. No prior request for the relief sought in this Application has been made to this or any other court.

WHEREFORE, the Debtor respectfully requests that the Court enter an order substantially in the form attached hereto as <u>Exhibit C</u>: (a) approving, pursuant to section 105(a) and 363(b) of the Bankruptcy Code, (i) the appointment of Wayne Tanner as CRO pursuant to the terms of the Agreement, and (ii) the terms of the Agreement, including the proposed fee structure and indemnification provisions, as set forth in the Agreement; and (b) granting such other and further relief as the Court deems appropriate.

Dated: May 29, 2019

Respectfully submitted,

**AMERICAN HOME PRODUCTS LLC**

_____
Gregory Bangs, Chief Financial Officer