# **EXHIBIT 1**

**Asset Purchase Agreement**

## ASSET PURCHASE AGREEMENT

**THIS ASSET PURCHASE AGREEMENT** (this "Agreement") is made as of May 29, 2019 (the "Effective Date"), by and between **AMERICAN HOME PRODUCTS LLC**, a Delaware limited liability company (the "Seller"), and **THE LOUVER SHOP HOLDINGS, LLC**, a Delaware limited liability company ("Buyer"). Seller and Buyer are sometimes referred to as the "Parties."

### RECITALS:

**WHEREAS**, Seller is engaged in the business of manufacturing and selling certain components and other products comprising interior and exterior window treatments (the "Business"); and

**WHEREAS**, Seller intends to commence a voluntary case (the "Bankruptcy Case") under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), before the United States Bankruptcy Court for the Northern District of Georgia (the "Bankruptcy Court") on or before May 29, 2019 (the "Petition Date"); and

**WHEREAS**, Buyer desires to purchase certain of the assets of Seller related to or used by Seller in connection with the Business and to have assigned to it certain executory contracts of Seller related to the Business, and Seller desires to sell, assign and transfer to Buyer the Acquired Assets as more particularly described herein and in accordance with Sections 105, 363 and 365 of the Bankruptcy Code; and

**WHEREAS**, the Parties agree that time is of the essence in connection with the sale of the Acquired Assets, and Buyer has stated that a rapid consummation of the sale of the Acquired Assets is essential; and

**WHEREAS**, the Acquired Assets will be sold pursuant to an order of the Bankruptcy Court approving such sale under among other governing authority, Sections 105, 363 and 365 of the Bankruptcy Code (the "Sale Order" defined in Section 6(c)(ii)(B)) herein).

**NOW**, **THEREFORE**, for and in consideration of the foregoing and their mutual covenants and agreements set forth below, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, intending to be legally bound, hereby agree as follows:

1.    SALE OF ASSETS

(a)    Acquired Assets. At the Closing (as defined in Section 3(a)), pursuant to Sections 105, 363, and 365 of the Bankruptcy Code and on the terms and subject to the conditions of this Agreement, Seller shall sell, assign and transfer to Buyer, and Buyer shall purchase, all of Seller's rights, title and interest in and to the Acquired Assets. "Acquired Assets" means all assets of Seller, except for those assets specifically set forth on Schedule 1.1(a) (such excluded assets, the "Excluded Assets").

(b)    Assumed Seller Contracts. To the extent the Acquired Assets include any contracts or agreements related to the Business (such contracts or agreements, the "Assumed Seller Contracts"), Seller shall use commercially reasonable efforts to assign such Assumed Seller Contracts to Buyer, including taking all reasonable and necessary actions required by the Bankruptcy Court to obtain an order containing a finding that the proposed assignment of the

Assumed Seller Contracts to Buyer and Buyer's assumption thereof satisfies all applicable requirements of Section 365 of the Bankruptcy Code, to the extent applicable. Buyer shall use commercially reasonable efforts to comply with all of the requirements of Section 365 of the Bankruptcy Code necessary to permit such assumption and assignment, to the extent applicable. On the Closing Date, (x) Seller shall, pursuant to the Sale Order and the Assignment and Assumption Agreement (as defined in Section 3(b)), assign, or cause to be assigned, to Buyer (the consideration for which assignment is included in the Purchase Price) each of the Assumed Seller Contracts that is capable of being so assigned and (y) Buyer shall pay promptly all Cure Costs (if any) in connection with such assignment (as agreed to between Buyer and Seller or as determined by the Bankruptcy Court) and assume, perform and discharge any liabilities (if any) assumed under the Assumed Seller Contracts, pursuant to the Sale Order and the Assignment and Assumption Agreement. For purposes of this Agreement "Cure Costs" means all monetary liabilities, including pre-petition monetary liabilities, of Seller that must be paid or otherwise satisfied to cure all of Seller's monetary defaults under the Assumed Seller Contracts pursuant to Section 365 of the Bankruptcy Code at the time of the assumption thereof and assignment to Buyer as provided hereunder as such amounts are determined by the Bankruptcy Court or approved pursuant to the assignment and assumption procedures provided for in the Bidding Procedures Order.  A list of the Assumed Seller Contracts and associated Cure Costs is set forth on Schedule 1.1(b).

(c)    Non-Assumption of Liabilities. Buyer will not assume or have any responsibility with respect to any liability of Seller other than such liabilities listed on Schedule 1.1(c) hereto (the "Assumed Seller Liabilities").

2.    PURCHASE PRICE

(a)    Purchase Price. The aggregate purchase price for the Acquired Assets is $8,000,000.00 plus Cure Costs as provided for in Section 1 (the "Purchase Price"). The Purchase Price is payable at Closing and shall be paid by Buyer to Seller in the form of setoff of indebtedness owed by Seller to Buyer, in accordance with and in the manner approved by the Sale Order in the Bankruptcy Case, except for the Cure Costs, which shall be paid in cash.

(b)    Allocation of Purchase Price. The Parties shall endeavor in good faith to agree upon the allocation of the Purchase Price on or before the Closing Date, and file all Federal and state income tax returns and all other forms and returns, including Internal Revenue Service Form 8594, in accordance with such allocation.

3.    CLOSING

(a)    Closing. Subject to the fulfillment of all conditions precedent in Section 7 of this Agreement, the closing of the purchase of the Acquired Assets and the assumption of the Assumed Seller Contracts (the "Closing") shall take place not later than August 12, 2019 or any earlier date otherwise agreed to in writing by both Seller and Buyer (the "Closing Date"). The Closing shall occur by the concurrent transfer of interests and the payment of the Purchase Price. All documents or other deliveries required to be made by Buyer or Seller at Closing, and all transactions required to be consummated concurrently with Closing, shall be deemed to have been delivered and to have been consummated simultaneously with all other transactions and all other deliveries, and no delivery shall be deemed to have been made, and no transaction shall be

deemed to have been consummated, until all deliveries required by Buyer and Seller shall have been made, and all concurrent or other transactions shall have been consummated.

(b)    Seller's Closing Deliveries. At the Closing, Seller shall deliver to Buyer (i) possession of all tangible assets comprising the Acquired Assets, (ii) a Bill of Sale substantially in the form attached hereto as <u>Exhibit A</u> duly executed by Seller (the "<u>Bill of Sale</u>"), and, if applicable (iii) an Assignment and Assumption Agreement in respect of the Assumed Seller Contracts and other intangibles comprising part of the Acquired Assets substantially in the form attached hereto as <u>Exhibit B</u> duly executed by Seller (the "<u>Assignment and Assumption Agreement</u>"). In addition, for the period from the Closing through and including thirty (30) days after Closing, Seller shall execute and deliver, without further consideration, such further instruments of transfer and take such other commercially reasonable action as Buyer may require to transfer to Buyer, or perfect the transfer to Buyer of, any of the Acquired Assets to the extent approved by the Bankruptcy Court.

(c)    Buyer's Closing Deliveries. At the Closing, Buyer shall deliver to or on behalf of Seller (i) the Purchase Price in accordance with Section 2(a) of this Agreement, (ii) payment of the Cure Costs, (iii) a signed counterpart to the Bill of Sale, and, if applicable (iv) a signed counterpart to the Assignment and Assumption Agreement.

4.    REPRESENTATIONS AND WARRANTIES OF SELLER

Seller hereby represents, warrants and covenants to Buyer, to the best knowledge of Wayne Tanner and Greg Bangs, as follows:[7]

(a)    Authorization. Seller is a limited liability company, duly organized, validly existing and in good standing under the laws of the State of Delaware. The execution and delivery by Seller of this Agreement to Buyer and the sale contemplated hereby has been duly and validly authorized by any and all necessary action on the part of Seller and its members, and Seller shall deliver to Buyer, at or prior to the execution hereof, copies, certified by a duly-authorized officer of Seller, of the resolutions of Seller's members and/or managers, as applicable, granting such authority. Subject to Bankruptcy Court approval, this Agreement and the documents executed pursuant to this Agreement (collectively the "<u>Definitive Documents</u>") to which Seller is a party have been duly and validly executed by Seller and, assuming due authorization, execution and delivery by Seller of the Definitive Documents to which it is a party, such Definitive Documents will constitute legal, valid and binding obligations of Seller, enforceable against Seller in accordance with their terms, upon the entry of the Sale Order.

(b)    No Conflict. Except for (i) orders, approvals or authorizations of the Bankruptcy Court and (ii) for consents, orders, approvals, authorizations, or registrations, which, if not obtained, would not, individually or in the aggregate, have a material adverse effect on the Business, Seller has full power, right and authority to sell and transfer the Acquired Assets to Buyer and the execution, delivery and performance of this Agreement by Seller and compliance by Seller with the terms hereof will not (x) conflict with any provision of the organizational documents of Seller; (y) to Seller's knowledge, result in a default (or give rise to any

---

[7] Buyer understands and agrees that the representations are being made by Seller, and that Mr. Bangs' knowledge comes from his position as an employee and Mr. Tanner's knowledge comes from his position as an employee of Aurora Management Consultants.  In each case, neither Mr. Bangs nor Mr. Tanner shall have any personal liability with respect to the representations and warranties given herein.

termination, cancellation or acceleration) under any of the terms, conditions or provisions of any agreement to which Seller is a party or by which it is bound, except for such defaults (or rights of termination, cancellation or acceleration) as to requisite waivers or consents have been obtained; or (z) violate any statute, law, rule, regulation, order, writ, injunction or decree of any governmental authority or create a lien, encumbrance, security interest or claim upon any of the assets of Seller.

(c)    Title. At the Closing, Buyer will obtain, good and marketable title to the Acquired Assets, free and clear of all liens, claims, interests, encumbrances and security interests of any kind or nature whatsoever, other than with respect to the Assumed Seller Liabilities and liens and security interests acting as security therefor, pursuant to the Sale Order.

(d)    Litigation. Except as set forth on Schedule 4(d), and other than claims asserted or that may be asserted in the Bankruptcy Case, there is no claim, judgment, litigation or proceeding in existence or pending at present, or to the knowledge of Seller threatened, against or relating to the Acquired Assets or the Business which would affect or encumber the Acquired Assets; no replevins, attachments, executions or tax assessments or liens are in force against Seller or the Acquired Assets; and Seller does not know, or have reasonable grounds to know, of any basis for any such action, or of any governmental investigation relative to Seller, the Acquired Assets or the Business.

(e)    Assumed Seller Contracts. On the Closing Date and upon payment of the Cure Costs by Buyer, to Seller's knowledge each such Assumed Seller Contract will be in full force and effect.

(f)    Broker. No broker has been engaged by Seller in connection with the transaction contemplated by this Agreement and no brokerage fees will be payable by Seller to any party as the result of the consummation of such transaction.

(g)    Compliance with Law. Seller has filed with the appropriate governmental authorities all material applications, notifications and other documents and has been issued and is in compliance with all material requirements for all laws, regulations, permits, certificates, licenses, approvals and other authorizations required to operate the Business, except where the failure to do so would not have a material adverse effect on the Business. Seller is in material compliance with each (and has not received any claim or notice that the Business is not in compliance with or that it is in violation of any) law to which the Business is subject (including all record keeping and reporting requirements thereof).

(h)    Governmental Notices. Other than claims filed in the Bankruptcy Case, Seller has not received from any governmental authority any material request for information, notice of claim, demand letter, or other notification in connection with the conduct of the Business or the use of the Acquired Assets.

5.    REPRESENTATIONS AND WARRANTIES OF BUYER

Buyer hereby represents, warrants and covenants to Seller that Buyer is a limited liability company, duly organized and validly existing under the laws of the State of Delaware. The execution and delivery by Buyer of this Agreement to Seller and the transactions contemplated hereby have been duly and validly authorized by any and all necessary action on the part of Buyer and its members and/or managers, and Buyer shall deliver to Seller, at or prior to the

execution hereof, copies, certified by an appropriate Buyer officer, of the resolutions of Buyer's members and/or managers granting such authority. Subject to Bankruptcy Court approval, Definitive Documents to which Buyer is a party have been duly and validly executed by Buyer and, assuming due authorization, execution and delivery by Buyer of the Definitive Documents to which it is a party, such Definitive Documents will constitute legal, valid and binding obligations of Buyer, enforceable against Buyer in accordance with their terms, upon the entry of the Sale Order.

6.    COVENANTS

(a)    Access and Investigation. Between the date hereof and the Closing, Seller grants to Buyer and to its duly authorized representatives including, but not limited to, Buyer's employees, accountants and counsel, reasonable access to (i) financial information concerning the Acquired Assets or the Business (other than pricing information, customer lists or personnel files) as Buyer may reasonably request and (ii) reasonable access, during normal business hours, to the Acquired Assets and to present management employees of the Business who have information regarding the Acquired Assets and Business, and releases all such employees from any obligations of confidentiality or non-disclosure with regard to disclosures made by such employees to Buyer for the purpose of evaluating the transactions contemplated by this Agreement.

(b)    Notice of Sale. Seller shall mail notice of the sale, which notice will comply and be served in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, any applicable local bankruptcy rules, and any applicable order of the Bankruptcy Court, to parties who assert any interest, lien, encumbrance or claim in or against the Acquired Assets, any non-debtor party to a contract that is being assigned hereunder, and any committee of unsecured creditors appointed in the Chapter 11 Case.

(c)    Bankruptcy Court Approvals.

(i)    Seller confirms that its negotiation of this Agreement with Buyer is critical to its obtaining the highest and best price for its assets, and that without Buyer's commitment of substantial time and expense to the process, Seller would have to employ a less orderly process for the sale of its assets and therefore risk attracting lower prices. Seller acknowledges that Buyer would not have invested the time and incurred the expense of negotiating and documenting the transaction if it were not entitled to the reimbursement of expenses as described below. Notwithstanding anything in this Agreement to the contrary, if Buyer is not the successful bidder for the Acquired Assets because a bid or bids higher and better than the Purchase Price is approved by the Bankruptcy Court after entry of the Sale Order, Buyer shall be entitled to the reimbursement by Seller of Buyer's actual expenses incurred in connection with the negotiation and documentation hereof and associated actions in the Bankruptcy Case, including, without limitation, the reasonable fees and actual expenses incurred by legal counsel and other professionals of Buyer in connection therewith (the "Expense Reimbursement"), provided this Agreement has not been terminated by Seller in accordance with this Agreement at such time. The Expense Reimbursement shall be payable to Buyer at the closing of the sale of the Acquired Assets to such alternate bidder and shall be afforded administrative expense priority under Sections 503(b) and 507(a) of the Bankruptcy Code.

(ii)    As promptly as possible after the Petition Date, Seller shall file and serve motions pursuant to Sections 105, 363, and 365 of the Bankruptcy Code, as applicable, in a form reasonably approved by counsel for Buyer:

(A)    seeking entry of an order substantially in the form attached hereto as <u>Exhibit C</u> (the "<u>Procedures Order</u>"), approving among other things, (i) the payment of the Expense Reimbursement as an administrative priority claim under Bankruptcy Code Sections 503(b) and 507(a), (ii) procedures for the sale of the Acquired Assets (including an overbid amount of US $100,000 over the Purchase Price, an incremental bid amount of US $50,000 and matching bid provisions), (iii) the payment by Buyer to Seller of the Purchase Price for the Acquired Assets by virtue of set-off against <u>both</u> pre-petition and post-petition amounts owed by Seller to Buyer, and (iv) setting dates for the auction sale of the Acquired Assets no later than fifty-five (55) days after the Petition Date (the "<u>Auction Hearing Date</u>"), and the hearing on the sale of the Acquired Assets no later than sixty (60) days after the Petition Date (the "<u>Sale Hearing Date</u>");

(B)    seeking entry of an order substantially in the form attached hereto as <u>Exhibit D</u> (the "<u>Sale Order</u>"), which, among other things, (i) authorizes Seller to sell, transfer and assign the Acquired Assets to Buyer, on an expedited basis, pursuant to this Agreement and Bankruptcy Code Sections 105, 363 and 365 of the Bankruptcy Code, as applicable, free and clear of liens, claims, interests, encumbrances and security interests of any nature or kind, other than with respect to the Assumed Seller Liabilities and liens and security interests acting as security therefor, (ii) permits Buyer to pay the Purchase Price for the Acquired Assets by virtue of setoff against secured obligations owed by Seller to Buyer, (iii) determines that Buyer is a good faith purchaser under Section 363(m) of the Bankruptcy Code and that Buyer has acted in good faith, is a bona fide purchaser for value, the Purchase Price is fair and reasonable, and the sale of the Acquired Assets is free and clear of all liens, claims, interests, and encumbrances, other than with respect to the Assumed Seller Liabilities and liens and security interests acting as security therefor; (iv) provides that the Assumed Seller Contracts are assigned to Buyer pursuant to 11 U.S.C. Section 365, and that, upon payment of the requisite Cure Cost and performance of any other obligation required under 11 U.S.C. Section 365, all Assumed Seller Contracts are enforceable against the nondebtor counterparties thereto; (v) provides that Buyer assumes any obligation to cure the Seller Assigned Contracts; (vi) is in all respects in a form reasonably acceptable to counsel for Buyer; and (vii) provides that the fourteen (14) day periods provided for in Federal Rules of Bankruptcy Procedure 6004(h) and 6006(d) are waived; and

(C)    seeking entry of an order substantially in the form attached hereto as <u>Exhibit E</u> (the "<u>DIP Order</u>"), which, among other things: (i) approves a post-petition loan from Buyer to Seller in accordance with an approved budget but not to exceed $400,000 (the "<u>DIP Obligations</u>") upon loan documents in form and substance acceptable to Buyer in its sole discretion, which financing shall constitute super-priority claims against Seller and its bankruptcy estate pursuant to Section 364(c)(1) of the Bankruptcy Code, and be secured by liens and security interests in the Acquired Assets pursuant to Section 364(d) of the Bankruptcy Code, and is authorized by an order in form and substance acceptable to Buyer in its sole discretion, and (ii) finds that Buyer holds (x) first priority, perfected liens and security interests in and to the Acquired Assets under that certain Credit Agreement dated as of January 27, 2015, by and among Seller and The Huntington National Bank (the "<u>First Priority Prepetition Liens</u>"), and (y) second priority, perfected liens and security interests in and to the Acquired Assets under that certain Senior Subordinated Note Purchase Agreement dated January 27, 2015, by and among Seller and The Huntington Investment Capital Company II (the "<u>Second Priority Prepetition</u>

Liens", and together with the First Priority Prepetition Liens, collectively, the "Prepetition Liens"), securing indebtedness held by Buyer that is in an aggregate amount that is not less than $12,721,389.46 (the "Prepetition Secured Obligations").

(d)    Books and Records. After the Closing, Buyer shall allow Seller and any of its counsel, representatives, accountants and auditors (collectively, the "Seller's Representatives") reasonable access to all business records and files of Seller or the Business that are transferred solely to Buyer in connection herewith, which are reasonably required by such Seller's Representatives in order to complete the Bankruptcy Case or for tax or other valid business purposes, during regular business hours and upon reasonable notice to Buyer. The Seller's Representatives shall have the right to make copies of any such records and files; provided, however, that any such access or copying shall be had or done in such a manner so as not to unreasonably interfere with the normal conduct of Buyer's business or operations.

(e)    Additional Matters. Subject to the terms and conditions herein, except as provided by the Bankruptcy Code, the Bankruptcy Rules or any other orders entered or approvals or authorizations granted by the Bankruptcy Court in the Bankruptcy Case, each of the Parties hereto agrees to use all commercially reasonable efforts to take, or cause to be taken, all action and to do, or cause to be done, all things necessary, proper or advisable, including under applicable laws and regulations, to consummate and make effective the transactions contemplated by this Agreement, including using all commercially reasonable efforts to obtain all necessary waivers, consents and approvals required under this Agreement.

(f)    Preservation of Acquired Assets. Seller shall take all prudent actions, at Seller's cost, to safeguard, preserve and maintain the integrity of the Acquired Assets pending Closing.

(g)    Seller's Good Faith Cooperation. Seller shall cooperate in good faith to assist Buyer in preserving and protecting the Acquired Assets and the Business during the thirty (30) day transition period following the Closing, consistent with the obligations of both Parties set forth herein.

7.    CONDITIONS TO BUYER'S OBLIGATION

The obligation of Buyer to consummate the transactions to be performed by it in connection with the Closing is subject to satisfaction of all of the following conditions (all or any of which may be waived, in whole or in part, by Buyer):

(a)    Procedures Order. The Procedures Order has been entered by the Bankruptcy Court and is no longer subject to stay, modification, or appeal and has become a final order;

(b)    DIP Financing Order.  The DIP Order has been entered by the Bankruptcy Court and is no longer subject to stay, modification, or appeal and has become a final order, and that the indebtedness extended by Buyer to Seller pursuant to the DIP Order may be "credit bid" pursuant to Section 363(k) of the Bankruptcy Code and set off against the full amount of the Purchase Price for the Acquired Assets;

(c)    Prepetition Liens.  The Bankruptcy Court shall have found that the Prepetition Liens are valid, enforceable, perfected, liens and security interests in and to all the Acquired Assets, of first priority, with respect to the First Priority Prepetition Liens, and second priority,

with respect to the Second Priority Prepetition Liens, and held by Buyer, and that the Prepetition Obligations secured by such Prepetition Liens may be "credit bid" pursuant to Section 363(k) of the Bankruptcy Code and set off against the full amount of the Purchase Price for the Acquired Assets;

(d)    Sale Order. The Sale Order, in all respects in a form reasonably acceptable to counsel for Buyer, has been entered by the Bankruptcy Court and either (i) is no longer subject to stay, modification, or appeal and has become a final order; or (ii) provides that the fourteen (14) day periods provided for in Federal Rules of Bankruptcy Procedure 6004(h) and 6006(d) are waived;

(e)    Lease.  All necessary approvals for Buyer to obtain a new lease or lease extension of Seller's current lease in order to permit Buyer to continue operating the Business in substantially the same location as on the Petition Date have been provided by the applicable entities and authorities;

(f)    Seller's Representations and Warranties. Seller's representations and warranties contained in the Agreement are true and correct in all material respects as of the Closing Date as though such representations and warranties were made at such time;

(g)    Seller's Performance. Seller has, in all material respects, performed or complied with, as the case may be, all obligations, covenants and conditions required by this Agreement to be performed or complied with by it on or before the Closing Date;

(h)    Officer's Certificate. A duly authorized officer of Seller has executed and delivered to Seller a certificate dated as of the Closing Date certifying as to (f) and (g) above;

(i)    Bill of Sale and Assignment. Seller has executed and delivered the Bill of Sale and the Assignment and Assumption Agreement;

(j)    No Orders. There is no injunction or order of any court or government authority of competent jurisdiction prohibiting the transactions contemplated by this Agreement; and

(k)    Buyer's Title. Upon consummation of the transactions contemplated by this Agreement, Buyer will have obtained good and marketable title in and to the Acquired Assets.

8.    CONDITIONS TO SELLER'S OBLIGATIONS

The obligation of Seller to consummate the transactions to be performed by it in connection with the Closing is subject to satisfaction of the following conditions (all or any of which may be waived, in whole or in part, by Seller):

(a)    Sale Order. The Sale Order has been entered by the Bankruptcy Court;

(b)    DIP Order.  The DIP Order has been entered by the Bankruptcy Court;

(c)    Buyer's Representations and Warranties. Buyer's representations and warranties contained in the Agreement are true and correct in all material respects as of the Closing Date as though such representations and warranties were made at such time;

(d)      Buyer's Performance. Buyer has, in all material respects, performed or complied with, as the case may be, all obligations, covenants and conditions required by this Agreement to have been performed or complied with in all material respects on or before the Closing Date;

(e)      Officer's Certificate. A duly authorized officer of Buyer has executed and delivered to Seller a certificate dated as of the Closing Date certifying as to (c) and (d) above;

(f)      No Orders. There is no injunction or order of any court or government authority of competent jurisdiction prohibiting the sale;

(g)      Payment of Purchaser Price. Buyer has delivered to Seller the Purchase Price; and

(h)      Payment of Cure Costs. Buyer has paid the Cure Costs.

9.      SURVIVAL OF REPRESENTATIONS AND WARRANTIES

The representations and warranties of the Parties hereto included or provided for herein, shall not survive the Closing and there shall be no liability in respect thereof, whether such liability has accrued prior to the Closing or after the Closing, on the part of either Party.

10.      TERMINATION

(a)      Termination. At any time before the consummation and completion of the Closing, this Agreement may be terminated (i) by mutual written agreement of the Parties; (ii) by Buyer if (A) the DIP Order has not been entered on an interim basis on or before seven (7) days after the Petition Date; (B) the DIP Order has not been entered on a final basis on or before twenty-one (21) days after the Petition Date; (C) the Procedures Order has not been entered by twenty-one (21) days after the Petition Date; or (D) the Sale Order has not been entered on or before sixty (60) days after the Petition Date; (iii) Closing has not occurred on or before August 12, 2019; (iv) by Seller or Buyer if a purchase transaction for the Acquired Assets is approved by the Bankruptcy Court other than pursuant to this Agreement, subject to Buyer being designated the back-up bidder; (v) by Buyer in the event of any material breach by Seller of any of Seller's agreements contained herein and the failure of Seller to cure such breach within seven (7) calendar days after receipt of written notice from a Buyer requesting such breach to be cured; or (vi) by Seller in the event of any material breach by Buyer of any of its agreements contained herein and the failure of Buyer to cure such breach within seven (7) calendar days after receipt of written notice from Seller requesting such breach to be cured.

(b)      Effect of Termination. If the Agreement is terminated pursuant to clause (i) of paragraph (a) of this Section, all obligations of the Parties shall terminate without liability of any party to the other. If the Agreement is terminated pursuant to clauses (ii) or (v) of paragraph (a) of this Section, such termination is without prejudice to any other rights Buyer may have with respect to any breach of any representation, warranty or covenant by Seller. If the Agreement is terminated pursuant to clause (iv) of paragraph (a) of this Section, upon entry of an order of the Bankruptcy Court authorizing the payment of the Expense Reimbursement, Buyer shall be entitled to the Expense Reimbursement and Buyer shall have no further liability whatsoever under this Agreement (provided, however, that this Section 10(b) is without prejudice to any

other rights Buyer may have against Seller, including as the prepetition and post-petition lender to Seller).

11.    MISCELLANEOUS PROVISIONS

(a)    No Third-Party Beneficiaries. This Agreement shall not confer any rights or remedies upon any person other than the Parties and their respective successors and permitted assigns.

(b)    Entire Agreement. This Agreement and all other documents referred to herein constitute the entire agreement between the Parties and supersedes any prior understandings, agreements, or representations by or between the Parties, written or oral, to the extent they have related in any way to the subject matter hereof.

(c)    Succession and Assignment. This Agreement shall be binding upon and inure to the benefit of the Parties named herein and their respective successors and permitted assigns, including, in the case of Seller, any successor Chapter 7 trustee in the event such a trustee is appointed. No party may assign either this Agreement or any of its rights, interests, or obligations hereunder without the prior written approval of the other party.

(d)    Counterparts; Facsimile Signatures. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original but all of which together will constitute one and the same instrument. Any signature page delivered by facsimile or telecopy shall be binding to the same extent as an original signature page, with regard to any agreement subject to the terms hereof or any amendment thereto. Any party who delivers such a signature page agrees to later deliver an original counterpart to any party who requests it.

(e)    Headings. The section headings contained in this Agreement are inserted for convenience only and shall not affect in any way the meaning or interpretation of this Agreement.

(f)    Notices. All notices, demands, requests, consents, approvals or other communications required or permitted to be given with respect to this Agreement shall be in writing and shall be delivered (charges prepaid, receipt confirmed or return receipt requested (if available)) by hand, by internationally and nationally recognized air courier service or by facsimile, addressed as set forth below or to such other address as such party shall have specified most recently by written notice. Notice shall be deemed given and effective (i) if delivered by hand or by internationally or nationally recognized air courier service, when delivered at the address specified in this Section 11(f) (or in accordance with the latest unrevoked written direction from such party) or (ii) if given by electronic mail when such electronic mail is transmitted to the address specified in this Section 11(f) (or in accordance with the latest unrevoked written direction from such party), provided, that, appropriate confirmation is received and that any such electronic mail is promptly followed by delivery of written notice delivered by hand or by internationally or nationally recognized air courier service.

If to Seller:                                    If to Buyer:

| | |
|---|---|
| American Home Products LLC | The Louver Shop Holdings, LLC |
| c/o Wayne Tanner, Chief Restructuring Officer | c/o Steven Ross, Squire Ridge Company |
| 1215 Palmour Dr. | 2000 Auburn Drive |
| Gainesville, GA 30501 | Suite 420 |
| E-mail: wtanner@auroramp.com | Beachwood, OH 44122 |
| | E-mail: sross@squireridgecompany.com |
| With a copy to: | With a copy to: |
| McDonald Hopkins LLC | Nelson Mullins Riley & Scarborough LLP |
| 600 Superior Ave., East | 201 17th Street NW |
| Suite 2100 | Suite 1700 |
| Cleveland, OH 44114 | Atlanta, GA 30363 |
| Attention: Michael J. Kaczka, Esq. | Attention: Lee Hart, Esq. |
| E-mail: mkaczka@mcdonaldhopkins.com | E-mail: lee.hart@nelsonmullins.com |

(g)    Governing Law. This Agreement shall be governed by and construed in accordance with the domestic laws of the State of Georgia without giving effect to any choice or conflict of law provision or rule that would cause the application of the laws of any jurisdiction other than the State of Georgia.

(h)    Amendments and Waivers. No amendment of any provision of this Agreement shall be valid unless the same shall be in writing and signed by Buyer and Seller and approved by the Bankruptcy Court. No waiver by any party of any default, misrepresentation, or breach of warranty or covenant hereunder, whether intentional or not, shall be deemed to extend to any prior or subsequent default, misrepresentation, or breach of warranty or covenant hereunder or affect in any way any rights arising by virtue of any prior or subsequent occurrence.

(i)    Severability. Any term or provision of this Agreement that is invalid or unenforceable in any situation in any jurisdiction shall not affect the validity or enforceability of the remaining terms and provisions hereof or the validity or enforceability of the offending term or provision in any other situation or in any other jurisdiction.

(j)    Expenses. Except with respect to Seller's payment of the Expense Reimbursement as provided for in Section 6(c)(i), each of Buyer and Seller will bear its own costs and expenses (including legal fees and expenses) incurred in connection with the Agreement and the transactions contemplated hereby.

(k)    Construction. The Parties have participated jointly in the negotiation and drafting of this Agreement. In the event an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the Parties and no presumption or burden of proof shall arise favoring or disfavoring any Party by virtue of the authorship of any of the provisions of this Agreement. Any reference to any federal, state, local, or foreign statute or law shall be deemed also to refer to all rules and regulations promulgated thereunder, unless the context requires otherwise. The word "including" shall mean including without limitation.

(l)    Incorporation of Exhibits and Schedules. The exhibits and schedules identified in this Agreement are incorporated herein by reference and made a part hereof.

(m)    Bankruptcy Court Approval. The terms and conditions of this Agreement are subject to the approval of the Bankruptcy Court.


[*Signatures follow*]

IN WITNESS WHEREOF, the Parties hereto have executed this Asset Purchase Agreement as of the date first above written.

**SELLER**:

American Home Products LLC

By: _____
      Name:
      Title:

**BUYER**:

The Louver Shop Holdings, LLC

By: _____
      Name:
      Title:

**List of Schedules and Exhibits**

Schedule 1.1(a):          Excluded Assets
Schedule 1.1(b):          Assumed Seller Contracts and Cure Costs
Schedule 1.1(c):          Assumed Seller Liabilities
Schedule 4(d):            Litigation Matters
Exhibit A:                Bill of Sale
Exhibit B:                Assignment and Assumption Agreement
Exhibit C:                Procedures Order
Exhibit D:                Sale Order
Exhibit E:                DIP Order

## <u>SCHEDULE 1.1(a)</u>

**Excluded Assets**

[TO BE PROVIDED]

## **SCHEDULE 1.1(b)**

**Assumed Seller Contracts and Cure Costs**

[TO BE PROVIDED]

## <u>SCHEDULE 1.1(c)</u>

**Assumed Seller Liabilities**

[TO BE PROVIDED]

## <u>SCHEDULE 4(d)</u>

**Litigation Matters**

[TO BE PROVIDED]

<u>**EXHIBIT A**</u>

**Bill of Sale**

**BILL OF SALE AND ASSIGNMENT AGREEMENT**

THIS BILL OF SALE AND ASSIGNMENT AGREEMENT (this "<u>Bill of Sale</u>") is duly made, executed and delivered effective as of _____, 2019 (the "<u>Closing Date</u>"), by and between **AMERICAN HOME PRODUCTS LLC**, a Delaware limited liability company ("<u>Seller</u>"), and **THE LOUVER SHOP HOLDINGS, LLC**, a Delaware limited liability company ("<u>Buyer</u>"), pursuant and subject to all of the representations, warranties, terms, covenants and conditions of that certain Asset Purchase Agreement by and between Buyer and Seller, dated as of _____, 2019 (the "<u>Purchase Agreement</u>"). All capitalized terms used but not defined herein shall have the same meanings assigned to them in the Purchase Agreement and in the Sale Order (hereafter defined).

**RECITALS**

**WHEREAS**, on _____ (the "<u>Petition Date</u>"), Seller filed a voluntary petition for relief (the "<u>Bankruptcy Case</u>") under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") in the United States Bankruptcy Court for the Northern District of Georgia (the "<u>Bankruptcy Court</u>"), Case No. [_____]; and

**WHEREAS**, Seller continues to operate as debtor and debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code; and

**WHEREAS**, Buyer and Seller entered into the Purchase Agreement, pursuant to which Buyer agreed to purchase from Seller, and Seller agreed to sell to Buyer, the Acquired Assets; and

**WHEREAS**, the Purchase Agreement and the purchase and sale of the Acquired Assets were approved and authorized by the Bankruptcy Court pursuant to an order entered in the Bankruptcy Case on _____, 2019 (the "<u>Sale Order</u>"); and

**WHEREAS**, all conditions to the Closing were duly satisfied or waived pursuant to the Purchase Agreement, and the sale was consummated, transacted and closed as of the Closing Date set forth above; and

**WHEREAS**, the Purchase Agreement provides that the parties will deliver to each other at Closing executed counterparts of an original bill of sale evidencing the sale, transfer and conveyance of the Acquired Assets to Buyer, and this Bill of Sale is the bill of sale provided for in the Purchase Agreement; and

**WHEREAS**, Seller, in consideration of the Purchase Price paid to Seller under the Purchase Agreement, the receipt and sufficiency of which is hereby acknowledged, has sold, transferred, conveyed and assigned and by these presents does sell, transfer, convey and assign unto Buyer, its successors and assigns, all of Seller's rights, title and interests in and to the Acquired Assets.

**NOW, THEREFORE**, pursuant to the foregoing recitals, and in consideration of the representations, warranties, terms, covenants and conditions contained in the Purchase Agreement and the payment by Buyer to Seller of the Purchase Price set forth in the Purchase Agreement, the receipt of

which is hereby acknowledged, the parties hereto, intending to be legally bound by this Bill of Sale, hereby covenant, agree, promise, warrant, represent and declare as follows:

## AGREEMENT

1.  <u>Recitals</u>. The background recitals are incorporated herein and made a part of this Bill of Sale by this reference.

2.  <u>Sale and Transfer of Acquired Assets</u>. Effective as of the Closing Date, and pursuant to and in accordance with the Purchase Agreement and the Sale Order, Seller hereby sells, transfers, conveys and assigns to Buyer all of the Acquired Assets, free and clear of all liens, claims, encumbrances and interests pursuant to Section 363(b) and (f) of the Bankruptcy Code, other than the Assumed Seller Liabilities, and Buyer accepts such sale, transfer, conveyance and assignment of the Acquired Assets.

3.  <u>Further Actions</u>. Seller hereby covenants that, from time to time after delivery of this Bill of Sale, at Buyer's request and expense, and without further consideration, Seller will execute and deliver such instruments of conveyance and transfer and take such other actions as Buyer may reasonably request in order to more effectively sell, transfer, assign, deliver and vest in Buyer title to and possession of the Acquired Assets, and any and all other rights and interests pertaining thereto.

4.  <u>Governing Law</u>. This Bill of Sale shall be governed by and construed and enforced in accordance with the laws of the State of Georgia and the Bankruptcy Code.

5.  <u>Counterparts; Facsimiles</u>. This Bill of Sale may be executed in one or more counterparts, each of which shall constitute an original agreement but all of which together shall constitute one and the same instrument. The exchange of copies of this Bill of Sale and of signature pages by electronic mail or facsimile transmission shall constitute effective execution and delivery of this Bill of Sale as to the parties and may be used in lieu of the original Bill of Sale for all purposes.

6.  <u>Inurement</u>. This Bill of Sale will inure to the benefit of Buyer, its successors, assigns, grantees, administrators, receivers and trustees, and will be binding upon Seller, its estate, creditors, direct and indirect equity holders, all parties-in-interest, affiliates, successors, assigns, grantees, any affected third parties, administrators, receivers and trustees, including, without limitation, any trustee or successor trustee appointed or elected in the Bankruptcy Case.

*[Signature Page Follows]*

IN WITNESS WHEREOF, the parties hereto have executed this Bill of Sale Agreement as of the date first above written.

**SELLER**:

American Home Products LLC

By: _____
     Name:
     Title:

**BUYER**:

The Louver Shop Holdings, LLC

By: _____
     Name:
     Title:

## EXHIBIT B

### Assignment and Assumption Agreement

### ASSIGNMENT AND ASSUMPTION AGREEMENT

This Assignment and Assumption Agreement (this "Assignment") is made and executed as of this day of _____, 2019, by and between **AMERICAN HOME PRODUCTS LLC**, a Delaware limited liability company ("Assignor"), and **THE LOUVER SHOP HOLDINGS, LLC**, a Delaware limited liability company ("Assignee").

### Background

**WHEREAS**, this Assignment is being entered into by the parties hereto concurrently with the closing of the transactions contemplated by that certain Asset Purchase Agreement, dated as of _____, 2019, by and between Assignor and Assignee (the "Purchase Agreement"), pursuant to which, on the date hereof, Assignee has agreed to accept from Assignor the acquisition of certain assets of Assignor; and

**WHEREAS**, pursuant to the Purchase Agreement, all right, title and interest of Assignor in the Acquired Assets not assigned pursuant to that certain Bill of Sale, dated as of even date herewith (the "Bill of Sale"), are to be assigned to Assignee in exchange for the consideration specified in the Purchase Agreement and the assumption by Assignee of the Assumed Liabilities.

### Agreement

**NOW, THEREFORE**, in consideration of the premises and of the mutual representations, warranties, covenants and agreements set forth herein and in the Purchase Agreement, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.    Capitalized Terms. All capitalized terms used and not otherwise defined in this Assignment shall have the meanings ascribed to them in the Purchase Agreement.

2.    Assignment. Pursuant to, and subject to the terms and conditions of, the Purchase Agreement, Assignor by this instrument does convey, grant, bargain, sell, transfer, set over, assign, release, deliver and confirm unto Assignee and its permitted successors and assigns all of Assignor's right, title and interest in, to and under the Acquired Assets owned by Assignor not assigned pursuant to the Bill of Sale, including the Assumed Contracts.

3.    Assumption. Assignee hereby accepts the foregoing transfer and assignment of the Acquired Assets and, pursuant to, and subject to the terms and conditions of, the Purchase Agreement and this Assignment, Assignee hereby assumes and agrees to discharge and perform when due, the Liabilities of Seller that are Assumed Seller Liabilities and no other Liabilities.

4.    Purchase Agreement. Nothing in this Assignment shall be deemed to supersede, diminish, enlarge or modify any of the provisions of the Purchase Agreement, all of which survive the execution and delivery of this Assignment as provided and subject to the limitations set forth in the Purchase Agreement. In the event of any conflict or inconsistency between the terms of the Purchase Agreement and the terms hereof, the terms of the Purchase Agreement shall govern and control.

5.      <u>Other Provisions</u>. The provisions of the Purchase Agreement are incorporated herein by reference and shall apply to the terms and conditions of this Assignment and the parties hereto *mutatis mutandis*.

*[Signatures appear on following page.]*

**IN WITNESS WHEREOF**, the parties have executed this Assignment as of the date first above written.

SELLER:

American Home Products LLC

By: _____
      Name:
      Title:

**BUYER**:

The Louver Shop Holdings, LLC

By: _____
      Name:
      Title:

## EXHIBIT C

**Procedures Order**

**(to be provided)**

## **EXHIBIT D**

**Sale Order**

**(to be provided)**

## EXHIBIT E

**DIP Order**

**(to be provided)**