**IT IS ORDERED as set forth below:**



Date: June 19, 2019

_____
**James R. Sacca
U.S. Bankruptcy Court Judge**

_____

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION**

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| AMERICAN HOME PRODUCTS LLC,[1] | ) |
| | ) Case No. 19-21054-JRS |
| Debtor. | ) |
| | ) Judge Sacca |
| | ) |

**ORDER (A) AUTHORIZING AND APPROVING BID PROCEDURES IN
CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL OF THE
DEBTOR'S ASSETS; (B) SCHEDULING AN AUCTION AND SALE HEARING;
(C) APPROVING THE MANNER AND FORM OF NOTICE OF THE AUCTION AND
SALE HEARING; AND (D) GRANTING RELATED RELIEF**

Upon the Debtor's motion for entry of an order pursuant to sections 105, 363, and 365 of the Bankruptcy Code[2] and Bankruptcy Rules 2002, 6004, 6006 and 9008: (i) authorizing and approving Bid Procedures in connection with the sale (the "Sale") of substantially all of Debtor's assets; (ii) scheduling an Auction and Sale Hearing; (iii) approving the manner and form of notice of the Auction and the Sale Hearing; and (iv) granting related relief, Docket No. 22 (the "Motion");

---

[1] The last four digits of the Debtor's federal tax identification number are 3418.
[2] All capitalized terms used and not defined herein shall have the meanings ascribed to them in the Motion.

and it appearing that no previous motion for similar relief having been made; and it appearing that the Bankruptcy Court has jurisdiction over this matter; and it appearing that due notice of the Motion as set forth therein is sufficient under the circumstances, and that no other or further notice need be provided; and it further appearing that the relief requested in the Motion is in the best interests of the Debtor and its estate and creditors; and upon all of the proceedings had before the Bankruptcy Court; and after due deliberation and sufficient cause appearing therefor,

NOW, THEREFORE, THE COURT HEREBY FINDS AND CONCLUDES THAT:[3]

A.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

B.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this district and this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.  Good and sufficient notice of the Motion and the relief sought therein has been given under the circumstances, and no other or further notice is required except as set forth herein with respect to the Auction and Sale Hearing. A reasonable opportunity to object or be heard regarding the relief provided herein has been afforded to parties-in-interest.

D.  The Debtor has articulated good and sufficient reasons for, and the best interests of the estate, creditors, employees, and other parties in interest and stakeholders will be served by, this Court granting the relief requested in the Motion, including approval of (1) the Bid Procedures and (2) the form, timing, and manner of notice of the proposed Sale, the Bid Procedures, and the other matters described herein, including the Sale Notice.

E.  The Bid Procedures are reasonably designed to maximize the value to be achieved for the Acquired Assets.

---

[3] Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, as appropriate, pursuant to Bankruptcy Rule 7052.

F.  Under the circumstances, the Bid Procedures constitute a reasonable, sufficient, adequate, and proper means to provide any potential competing bidders with an opportunity to submit and pursue higher and better offers for all or substantially all of the Acquired Assets.

G.  The terms and conditions of the APA as they relate to the Bid Procedures and sale process are fair, reasonable, and the best available to the Debtor under the circumstances, reflect an exercise of prudent business judgment consistent with the Debtor's fiduciary duties, are based on good, sufficient, and sound business purposes and justifications, and are supported by reasonably equivalent value and consideration.

H.  The Sale Notice is reasonably calculated to provide parties in interest with proper notice of the sale of the Purchased Assets, the related Bid Procedures, the Sale Hearing, the structure of the Sale, and related implications for interested parties, including, without limitation, creditors, customers, suppliers, and current and former employees.

I.  The Assumption and Assignment Notice is reasonably calculated to give counterparties to executory contracts and unexpired leases proper notice of proposed assumption and assignment and establishment of cure costs.

J.  The Motion and this Order comply with all applicable provisions of the Bankruptcy Code and the Bankruptcy Rules.

K.  Due, sufficient, and adequate notice of the relief granted herein has been given to parties in interest.

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1. The Motion is GRANTED as set forth herein.

2. All objections to the entry of this Order not otherwise withdrawn, waived or settled, and all reservations of rights included therein, hereby are overruled and denied on the merits.

3. The following Bid Procedures and Cure Procedures are hereby approved:

a. <u>Qualified Bids</u>. The Debtor shall solicit bids through **July 29, 2019** (the "Bid Deadline"). Each competing bidder other than the Stalking Horse Bidder shall, on or before **4:00 p.m. (prevailing Eastern Time) on the Bid Deadline**, deliver to the Debtor as follows (collectively, a "Qualified Bid"):

(i) a cash deposit (via certified or bank check or wire transfer) of 5% of the cash purchase price of such bid (the "Deposit");

(ii) reasonable proof acceptable to the Debtor, in consultation with any statutory appointed committee of unsecured creditors (the "Committee"), of the interested party's ability to consummate a purchase of the Acquired Assets and assumption of any liabilities with respect to which such bidder seeks assignment from the Debtor and provide adequate assurance of future performance under all leases or contracts with respect to which such bidder seeks assignment from the Debtor, each on the terms set forth in such party's bid, including evidence of sufficient financing along with any other financial information which a bidder believes substantiates its ability to perform its obligations with regard to its bid (collectively, "Financial Information");

and

(iii) an executed asset purchase agreement, which asset purchase agreement shall (1) specify the amount of cash or other consideration offered by the competing bidder for the Acquired Assets (provided that the cash component of such bid may not be less than the sum of $8,000,000 (the purchase price in the Stalking Horse Bidder's APA) and $100,000); (2) not be subject to unperformed due diligence, financing conditions, corporate approval conditions, or regulatory approval conditions, nor provide for any expense reimbursement; (3) constitute an irrevocable offer by such competing bidder to complete its proposed purchase upon the terms set forth therein, and must confirm that it is irrevocable until closing of the sale of the Acquired Assets to the Successful Bidder (as defined below), and provide for an outside date that is on or before August 16, 2019; (4) provide for the purchase of substantially all of the Acquired Assets; (5) be accompanied by a marked-up version that shows all differences between such asset purchase agreement and the APA (which was filed with the Court as an exhibit to the Motion); (6) contain a list of the Debtor's executory contracts and unexpired leases with respect to which the bidder seeks assignment from the Debtor; (7) fully disclose the identity of each entity that will be bidding for the Acquired Assets or otherwise participating in connection with such bid; and (8) indicate whether such competing bidder agrees to act as the Back-Up Bidder (as defined below) in the event that such

competing bidder is not the Successful Bidder (as defined below), as well as identify any date past which it would not serve as the Back-Up Bidder.

If the competing bidder is an entity formed for the purpose of a sale transaction, then such entity must provide financial disclosure acceptable to Debtor that demonstrates such competing bidder's financial ability to consummate a competing sale transaction. A competing bidder also must establish that it has the financial ability to consummate its proposed transaction by no later than August 16, 2019. In order to participate in the bidding process, receive due diligence materials, and/or otherwise be considered for any purpose hereunder, a competing bidder must first deliver an executed confidentiality agreement in form and substance satisfactory to the Debtor and its counsel, which confidentiality agreement will be made available to, among others, those interested parties that contact the Debtor's counsel, provided that if any competing bidder is or is affiliated with a competitor of the Debtor, the Debtor will not be required to disclose to such competing bidder any trade secrets or proprietary information. If the Debtor determines that a competing bidder does not constitute a Qualified Bidder (as defined below), then such competing bidder's ability to receive due diligence access or additional non-public information shall terminate, except as otherwise agreed by the Debtor. Upon receipt of any bid, the Debtor shall distribute copies of such bid to the Stalking Horse Bidder.

b. <u>Credit Bid by Stalking Horse Bidder as Prepetition Secured Lender</u>. The Stalking Horse Bidder serves as the Debtor's prepetition secured lender (in such capacity the "Prepetition Secured Lender") and the post-petition secured lender in the Bankruptcy Case. The Stalking Horse Bidder shall be entitled to credit bid up to the full value of its prepetition secured claims in its capacity as Prepetition Secured Lender and up to the full value of its postpetition secured claims in its capacity as DIP Lender, each in the Stalking Horse Bidder's sole discretion.

c. <u>Qualified Bidders</u>. Any initial overbid for the Acquired Assets shall be in the amount equal to the sum of $8,000,000 and $100,000. In the event that the Debtor shall reasonably determine that such overbid is a higher and better bid than that set forth in the APA, the Stalking Horse Bidder shall have the right to amend the APA as necessary in its reasonable discretion, as agreed with the Debtor, in order to cause the Stalking Horse Bidder's bid format to be comparable to such higher and better bid (for the avoidance of doubt, the amendment of the APA by the Stalking Horse Bidder will in no event result in the cancellation of the Auction if the Debtor has received at least one (1) other Qualified Bid). Only those persons or entities who have submitted a Qualified Bid in compliance with this Order shall be a "Qualified Bidder"; *provided, however*, that the Stalking Horse Bidder shall be deemed to be a Qualified Bidder for all purposes under the Bid Procedures. Each Qualified Bidder shall be invited to attend the Auction at the office of Debtor's counsel, Kelley & Clements LLP, 340 Jesse Jewell Parkway, Suite 435, Gainesville, Georgia 30501, which Auction must be attended in person by the Qualified Bidder or an authorized representative of the Qualified Bidder.

      d.    <u>Identity of Bidders</u>.  In addition to the information required above, each competing bidder other than the Stalking Horse Bidder shall, on or before **July 29, 2019**, provide written identification of the bidder, its principals, and the representatives thereof who are authorized to appear and act on their behalf for all purposes regarding the contemplated transaction and written disclosure of any connections or agreements with the Debtor, the Stalking Horse Bidder, any other known potential bidder, and/or any officer, director, or direct or indirect equity security holder of the Debtor.

      e.    <u>The Auction</u>.  The Auction shall commence at 10:00 a.m. (prevailing Eastern Time) on **July 31, 2019**.  The Acquired Assets shall be sold free and clear of all liens, claims, encumbrances, and interests to the fullest extent allowed under section 363(f) of the Bankruptcy Code.  The following rules shall govern the Auction:

    i.    At least 24 hours prior to the Auction, the Debtor will notify all Qualified Bidders in writing of the highest and best Qualified Bid, as determined by Debtor in its discretion, which may be the APA (the "Baseline Bid").  Complete copies of all asset purchase agreements, amendments to the APA, and all other bid materials submitted by each other Qualified Bidder will be available to each other Qualified Bidder upon request to counsel for the Debtor.

    ii.    Only Qualified Bidders may bid at the Auction. If multiple Qualified Bids are received, each Qualified Bidder shall have the right to continue to improve its Qualified Bid at the Auction.  Bidding shall proceed in increments of $50,000.00 ("Bidding Increment").  Only the authorized representatives of each of the Stalking Horse Bidder and any other Qualified Bidder, the Debtor, and the Committee shall be permitted to attend the Auction, except as otherwise expressly ordered by the Bankruptcy Court.

    iii.    At the conclusion of the Auction, subject to Court approval following the Auction, the highest and best offer shall be selected and announced as the successful bidder by the Debtor (the "Successful Bidder"), and the bid of the bidder that submits the next highest and best bid (designated in accordance with the Debtor's business judgment), shall be selected and announced by the Debtor (the "Back-Up Bid" by the "Back-Up Bidder"); *provided, however*, that designation of such bidder as the Back-Up Bidder must be consistent with the asset purchase agreement submitted in connection with such bidder's bid.  For the avoidance of doubt, if there are no Qualified Bidders who agree to act as the Back-Up Bidder, then there shall be no Back-Up Bidder.  There will be no further bids or offers considered by the Debtor following the conclusion of the Auction and the announcement of the Successful Bidder and, as applicable, the Back-Up Bidder.

    iv.    If Debtor does not receive at least one Qualified Bid from a Qualified Bidder other than the Stalking Horse Bidder, then (1) no Auction shall

    be scheduled or conducted, the Debtor and the Stalking Horse Bidder are authorized to move forward with the transactions contemplated by the APA (subject to the entry of the Sale Order), the transaction consideration contemplated by the APA will be determinative of the value of the Acquired Assets, and the Court shall not consider any competing or alternative offers or proposals to purchase the Acquired Assets; and (2) the Debtor will file on the docket of the Chapter 11 Case a "Notice of Cancellation of Auction."

   v. The Auction may be adjourned from time to time by the Debtor, provided that no such adjournment shall affect the rights of the Stalking Horse Bidder under the APA. Reasonable notice of such adjournment and the time and place for the resumption of the Auction shall be given to the Stalking Horse Bidder, all Qualified Bidders that have submitted a Qualified Bid, and counsel to the Committee.

  f. <u>Successful Bidder</u>. The Debtor may base the selection of the Successful Bidder and Back-Up Bidder on the following factors, among others: purchase price, liabilities assumed in the bid (provided that in no event shall the cash component required for a Qualified Bid be reduced as a result of a bidder's proposed assumption of liabilities), retention of the Debtor's employees, the markup of the form of asset purchase agreement filed by Debtor submitted with the bid, and the apparent ability of the bidder to close the proposed transaction. The Debtor may (a) reject any bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bid Procedures, or the terms and conditions of sale, or (iii) contrary to the best interests of the Debtor, its estate, and its creditors; and/or (b) refuse to consider any bid that fails to comply with the Bid Procedures. After the determination of the Successful Bidder, the Debtor shall (i) if the Successful Bidder is a bidder other than the Stalking Horse Bidder, promptly execute the asset purchase agreement previously executed and submitted by such Successful Bidder, together with any changes thereto necessitated by the parties' actions at the Auction, or (ii) if the Successful Bidder is the Stalking Horse Bidder, move forward with the transactions contemplated by the APA, subject to the entry of the Sale Order. All rights of the Stalking Horse Bidder, (if any) to object to the Debtor's selection of a Successful Bidder or Back-Up Bidder, or to object to the consummation of the sale transaction represented by either such bid, are preserved.

  g. <u>Back-Up Bidder</u>. If the Successful Bidder fails to consummate an approved sale in accordance with the applicable asset purchase agreement or such agreement is terminated (or, in the event that the Stalking Horse Bidder is the Successful Bidder, the Parties fail to consummate the transactions contemplated by the APA or the APA is terminated), (i) the Debtor shall be authorized to deem the Back-Up Bid the Successful Bid, and the Debtor shall be authorized to consummate the sale with the Back-Up Bidder without further order of the Bankruptcy Court (or, in the event that the Stalking Horse Bidder is the Back-Up Bidder, move forward with the transaction contemplated by the APA, subject to the APA); *provided, however*, that if the Stalking Horse Bidder is the Successful Bidder, the Back-Up Bidder shall remain the Back-Up Bidder in accordance with the Back-Up Bidder's asset purchase agreement; and (ii) the Deposit provided by such defaulting bidder shall be forfeited to the Debtor in accordance with the defaulting bidder's asset purchase agreement. The Debtor specifically reserves the right to seek

all appropriate damages or equitable remedies from a defaulting Successful Bidder or Back-Up Bidder.

        h.     <u>Modification of Bidding and Auction Procedures</u>.  The Debtor may modify the Bid Procedures with respect to the Bid Deadline (which shall not be extended past the outside date in the DIP Order other than as permitted by the DIP Order), whether a bid that materially complies with the requirements of the Bid Procedures (as determined by the Debtor in the reasonable exercise of its business judgment consistent with its fiduciary duties) is a Qualified Bid, and the time (which shall not be extended past the outside date in the DIP Order other than as permitted by the DIP Order), manner, and place of the Auction; *provided*, *however*, that the Bid Procedures may not be otherwise modified except with the express written consent of the Debtor and the Stalking Horse Bidder; *provided*, *further*, *however*, that in no event may the Bid Procedures be modified to reduce the required cash component of a Qualified Bid.  All rights of the Stalking Horse Bidder in respect of any modification of the Bid Procedures by the Debtor are preserved. The Debtor may make such modification to the Auction Procedures as are necessary and not inconsistent with this Order.

        i.     <u>Contract Cure Procedures</u>.  To the extent a Qualified Bidder seeks approval in the Sale Order (as defined in the Motion) of assumption and assignment of executory contracts and/or unexpired leases, the following procedures (the "Cure Procedures") shall apply for notifying counterparties to executory contracts and unexpired leases of potential Cure Amounts (as defined below).

        i.     On or before July 15, 2019, the Debtor will file a notice of potential assumption, assignment and/or transfer of executory contracts and unexpired leases identified by each Qualified Bidder (the "Designated Executory Contracts"), substantially in the form attached to the Motion as <u>Exhibit 5</u> (the "Notice of Assumption and Assignment"), and serve such notice on all non-debtor parties to the Designated Executory Contracts (the "Contract Notice Parties").

        ii.     The Notice of Assumption and Assignment shall identify the calculation of the cure amounts, if any, that the Debtor believes must be paid to cure all defaults outstanding under each Designated Executory Contract (the "Cure Costs") as of such date.  The Notice of Assumption and Assignment shall also contain information regarding how a non-debtor party to a Designated Executory Contract may obtain adequate assurance of future performance information from the applicable Qualified Bidder (the "Adequate Assurance Information").  The Notice of Assumption and Assignment shall provide that a non-debtor party to a Designated Executory Contract may object to the Cure Costs, the Adequate Assurance Information or the assumption and assignment of such contract or lease at the hearing to approve the sale or Sale Hearing or at a later hearing, as determined by the Debtor subject to the Court's calendar.

4. Each Qualified Bidder participating at the Auction will be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale. All Qualified Bidders at the Auction shall be deemed to have consented to the core jurisdiction and final adjudicatory power of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to the Auction, and the construction and enforcement of each Qualified Bidder's contemplated transaction documents, as applicable.

5. The Auction will be conducted openly.

6. Bidding at the Auction will be transcribed or videotaped.

7. The Sale Hearing shall be held on **August 2, 2019 at 11:00 a.m.** (prevailing Eastern Time) in Courtroom 1404 before The Honorable Judge James R. Sacca, United States Bankruptcy Judge, United States Bankruptcy Court for the Northern District of Georgia, Richard B. Russell Federal Building and United States Courthouse, 75 Ted Turner Drive SW, Atlanta, GA 30303

8. The Sale Hearing may be adjourned from time to time without further notice other than an announcement by the Debtor in the Bankruptcy Court of such adjournment on the date scheduled for the Sale Hearing, provided that no such adjournment shall affect the rights of the Stalking Horse Bidder under the APA.

9. The form of Sale Notice substantially in the form annexed to the Motion as <u>Exhibit 3</u> is hereby approved. The Debtor shall serve within two (2) business days (by first class mail, postage prepaid) after entry of this Order (the "Mailing Deadline"), the Sale Notice upon the Sale Motion Notice Parties (as defined in the Motion) and each of the Debtor's creditors.

10. Notice as set forth in the preceding paragraph shall constitute good and sufficient notice of the Motion as it relates to the Debtor's request for the scheduling of the Auction and the

Sale Hearing, and no other or further notice of the Motion, the Auction, and/or the Sale Hearing shall be necessary or required.

11. The form of Assumption and Assignment Notice substantially in the form annexed to the Motion as <u>Exhibit 5</u> is hereby approved.

12. Responses or objections, if any, to the Sale shall be filed with this Bankruptcy Court and served, so as to be actually received no later than August 1, 2019 at 4:00 p.m. (prevailing Eastern Time) on: (a) counsel for the Debtor, McDonald Hopkins LLC, Attn: Michael J. Kaczka, Esq., McDonald Hopkins LLC, 600 Superior Avenue East, Suite 2100, Cleveland, Ohio 44114; (b) counsel to the Stalking Horse Bidder, Nelson Mullins Riley & Scarborough, LLP, 201 17th Street, Suite 1700, Atlanta, Georgia 30363 (Attn: Lee Hart, Esq.); and (c) the Office of the United States Trustee, 75 Ted Turner Drive, S.W., Room 362, Atlanta Georgia 30303 (collectively, the "Notice Parties").

13. The Debtor is authorized and empowered to take such steps, incur and pay such costs and expenses, and do such things as may be reasonably necessary to fulfill the notice requirements established by this Order.

14. The stays provided for in Bankruptcy Rules 6004(h) and 6006(d) are waived and this Order shall be effective and enforceable immediately upon its entry.

15. In the event of any inconsistency between the terms and conditions of this Order and any order entered by this Court approving the Debtor's entry into the debtor-in-possession financing facility on an interim or final basis (the "DIP Orders"), the provisions of the DIP Orders shall govern and control.

16. The Court shall retain jurisdiction and power over any matter or dispute arising from or relating to the implementation of this Order.

END OF DOCUMENT

Prepared and presented by:

/s/ Charles N. Kelley, Jr.
Sean D. Malloy (admitted *pro hac vice*)
Ohio State Bar No. 0073157
Michael J. Kaczka (admitted *pro hac vice*)
Ohio State Bar No. 0076548
Maria G. Carr (admitted *pro hac vice*)
Ohio State Bar No. 0092412
McDONALD HOPKINS LLC
600 Superior Avenue, E., Suite 2100
Cleveland, OH 44114
Telephone: (216) 348-5400
Facsimile: (216) 348-5474
E-mail: smalloy@mcdonaldhopkins.com
    mkaczka@mcdonaldhopkins.com
    mcarr@mcdonaldhopkins.com

-and-

Charles N. Kelley, Jr.
Georgia State Bar No. 412212
KELLEY & CLEMENTS LLP
PO Box 2758
Gainesville, GA 30503
Telephone: 678-567-6120
Email: ckelley@kelleyclements.com

PROPOSED COUNSEL FOR DEBTOR
AND DEBTOR IN POSSESSION

No opposition:

/s/ David S. Weidbenbaum
David S. Weidenbaum
Georgia State Bar No. 745892
Attorney for United States Trustee
Signed with express permission by Charles Kelley